UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-752-H

GGNSC LOUISVILLE HILLCREEK, LLC;
GGNSC ADMINISTRATIVE SERVICES, LLC;
GGNSC HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS, LLC;
GOLDEN GATE NATIONAL SENIOR CARE, LLC;
GOLDEN GATE ANCILLARY, LLC; and
GGNSC CLINICAL SERVICES, LLC                    PLAINTIFFS

v.

RANDALL WARNER, Individually                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, GGNSC Louisville Hillcreek, LLC, *et al.* ("Golden Gate"), petition this Court under 9 U.S.C. § 4 to compel arbitration of the nursing home abuse and neglect claims of Defendant, Randall Warner ("Warner"). The odd procedural circumstance here is that Golden Gate filed a complaint in federal court to enjoin Warner's neglect claims from proceeding in state court. Warner has responded with a broad array of arguments to keep his state court case alive and well: lack of subject matter jurisdiction; abstention; inapplicability of the Federal Arbitration Act ("FAA") to the Arbitration Agreement Warner signed upon admission to the facility; and invalidity of the Agreement due to unconscionability and public policy. Each of these arguments raises interesting questions. Having considered all the arguments and for the reasons that follow, Warner's motion to dismiss is denied and Golden Gate's request for relief is granted in full.

I.

Warner was a resident of Golden Gate's Golden Living Center-Hillcreek facility (hereinafter "Hillcreek") located in Louisville, Kentucky, from April 11, 2011 to June 11, 2012, save for intermittent terms of hospitalization. While a resident there, Warner suffered physical and emotional trauma due to allegedly negligent care. This accelerated the deterioration of his health beyond the normal aging process, leading to such injuries as pressure sores, infections, and falls with injury.

Upon admission to Hillcreek, Warner signed an ADR Agreement. The pertinent portion describing covered disputes reads as follows:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties….Covered Disputes include but are not limited to….violation[s] of [] right[s] claimed to exist under federal, state, or local law…; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

ECF No. 1, Ex. A, § III. On May 21, 2013, however, Warner filed suit in state court against Golden Gate and Tim Kravis—Hillcrest's Nursing Home Administrator during Warner's period of residency—alleging negligence, medical negligence, corporate negligence, and violations of Kentucky's Residents' Rights Act.[1] Golden Gate filed an answer in state court raising the ADR Agreement as a defense. Shortly thereafter, Golden Gate filed the present complaint to compel arbitration of Warner's state claims and enjoin Warner from further pursuing his state court action against them.[2] Golden Gate further requests that after compelling arbitration and enjoining Warner, the Court stay this matter pursuant to 9 U.S.C §3 until the arbitration is completed, at

---

[1] Warner also named the entity GPH Louisville Hillcreek, LLC in the state action. Neither GPH Louisville Hillcreek nor Kravis is a plaintiff herein. Only Kravis's absence is deemed problematic by Warner, see Section II.B.
[2] It appears the state court matter has not proceeded beyond the initial pleadings. ECF No. 16-1.

which time the Court may enter judgment on any arbitration award. Warner filed a motion to dismiss the federal action—first alleging lack of subject matter jurisdiction based on the absence of a federal question, later on the grounds of lack of complete diversity of the parties, abstention, inapplicability of the FAA to the ADR Agreement, and invalidity of the ADR Agreement on both unconscionability and public policy grounds.

II.

The Federal Arbitration Act, 9 U.S.C. § 4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction "save for [the arbitration] agreement" over "a suit arising out of the controversy between the parties." In its complaint, Golden Gate identified 28 U.S.C. 1332(a)(1) as the font of jurisdiction allowing this Court to entertain its petition. The first major hurdle for the Court is whether it can properly assert federal jurisdiction in circumstances such as these. Warner makes three separate arguments for this Court's lack of jurisdiction to even consider the motion to compel arbitration.

A.

First, Warner argues that the amount at issue fails to meet the jurisdictional requirement.

The Sixth Circuit has instructed, "The true value of arbitration, the object of this [type of] litigation, cannot be determined without reference to the potential cost of the state claim [to the federal court plaintiff]." *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 Fed. App'x. 194, 196 (6th Cir. 2005) (unpublished); s*ee also CMH Homes, Inc. v. Goodner*, 799 F.3d 832, 837-38 (8th Cir. 2013) (extending the holding in Vaden v. Discover Bank, 556 U.S. 49 (2009), to hold that, as in cases where subject matter jurisdiction to entertain a FAA petition is premised on the presence of a federal question, to resolve whether diversity jurisdiction exists on a petition to compel arbitration, a court considers whether the amount in controversy between the

3

parties satisfies the jurisdictional minimum by "looking through" to the entire, actual controversy between the parties as they have framed it in state court); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he amount in controversy in a petition to compel arbitration…is determined by the underlying cause of action that would be arbitrated."). *But see We Care Hair Dev., Inc. v. Engen*, 180 F3d 838, 841 (7th Cir. 1999) ("Since the present suit is not a removal suit but rather an independent federal suit, it is the stakes of the arbitration and not the possible state court award that control.").

Here, Warner's state action seeks actual and punitive damages of an unspecified amount in excess of seventy-five thousand dollars and Golden Gate has specifically incorporated that amount into its federal petition as the amount in controversy. ECF No. 1, ¶ 12. Although Warner presumably calculated his damage claim by including the value of claims against Tim Kravis, the facility administrator who is not a named party to this action, Golden Gate has satisfied the bad faith standard with which district courts test claimed amounts in controversy: it does not appear to a legal certainty that Golden Gate's claim is really for less than the jurisdictional amount. *See Lodal, Inc. v. Home Ins. Co. of Illinois*, 156 F.3d 1230, 1998 WL 393766, **2 (6th Cir. 1998) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 289 (1938)). Because Warner claims punitive damages, the economic value of the arbitration to Golden Gate could well exceed the seventy-five thousand dollar requirement.

B.

Warner next contends that complete diversity of citizenship among the parties cannot be established because the Nursing Home Administrator named in Warner's state complaint, a Kentucky citizen who was not named as a plaintiff in this action, is an indispensable party under Federal Rule of Civil Procedure 19 and his joinder would destroy the complete diversity among

4

parties required by 28 U.S.C. 1332(a)(1).[3] There is no dispute that the rest of the parties named in this action are diverse.

Under Rule 19, the first step in determining whether Kravis is indispensable is to determine whether he is a necessary party. A party is necessary if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
> > (i) as a practical matter, impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Proc. 19. Warner's claims against both Kravis and the Golden Gate parties are based on the same occurrence—negligence that resulted in injury to Warner. Further, the arbitration agreement governs claims against the Golden Gate parties and against Kravis as administrator of the Hillcreek facility. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable,[4] Kravis would face inconsistent procedural remedies. Accordingly, the Court concludes that Kravis is a necessary party to the action.

Because Kravis's joinder would destroy diversity jurisdiction, the Court must determine whether he is indispensable. The following factors inform this analysis: (1) the extent to which a judgment rendered in Kravis's absence might prejudice Kravis or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in Kravis's

---

[3] As discussed above, Warner did not make this argument in his original motion to dismiss for lack of subject matter jurisdiction, but Plaintiffs have responded in full to this argument (*see* ECF No. 9) and are not prejudiced by the Court's consideration of it.

[4] A close reading of the Kentucky Supreme Court's opinion in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012) leads the Court to predict that the chances of this outcome are slim. Still, the possibility remains and this possibility is appropriate to consider at this juncture, per FRCP 19(a).

absence would be adequate; and (4) whether Golden Gate would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b). Warner argues that he will not be afforded complete relief in Kravis's absence, that he will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court is not persuaded.

First, the duplication of proceedings in these circumstances is an unfortunate but not a disqualifying factor. The Sixth Circuit has disapproved of this line of argument in a factually similar case addressing joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Warner's] decision to file a suit naming [Golden Gate and Kravis] in state court rather than to demand arbitration under the [ADR Agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.*, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (noting that the possibility of the plaintiff having to resolve its disputes in two forums-one in state court and one in arbitration-where one of the parties to the underlying dispute was not a party to the arbitration agreement, "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). The Sixth Circuit has reasoned that the analysis is no different when the arbitration clause covers both the federal plaintiff and an employee defendant named only in the state court action. *PaineWebber*, 276 F.3d at 203.

The Court considers that there is low risk that the state court will reach an inconsistent outcome regarding the subject ADR Agreement as it relates to any party. Even assuming such

6

risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *PaineWebber*, 276 F.3d at 203. Determining whether the dispute as it relates to Golden Gate is subject to arbitration is a simple matter of contract interpretation and does not require Kravis's presence or input. *Id.* In sum, the prejudice Warner identifies does not present the degree of prejudice necessary to support a conclusion that Kravis is an indispensable party. Where the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice. *Id.* at 205.

In support of the third factor pertaining to adequacy of available relief, Warner alludes to Kravis's status as a joint tortfeasor as making him an indispensable party. The Supreme Court has rejected this as a non sequitur. *See e.g.*, *Temple v. Synthes Corp.*, LTD., 498 U.S. 5, 8 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them); FED. R. CIV. P. 19 advisory committee notes (explaining that, under Rule 19(a), "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability").

Finally, Warner argues that an adequate remedy exists in state court if this Court were to dismiss the case. While that may be true, on balance, the factors do not dictate that the Court find Kravis an indispensable party. Under this analysis, the failure to join Kravis in this action does not warrant dismissal of Golden Gate's action.

C.

Warner, for the first time in his reply, argues that even if the Court determines it has subject matter jurisdiction, it should exercise its discretion and decline to invoke jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).[5]

In *Colorado River*, the Supreme Court announced an abstention doctrine under which a federal court, for reasons of "wise judicial administration," may stay or dismiss a federal suit pending resolution of a parallel state court proceeding. However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813. Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them," even when there is a pending state court action involving the same subject matter. *Id.* at 817. "'Abdication of the obligation to decide cases can be justified under [the abstention doctrine] only in the *exceptional circumstances* where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Moses H. Cone*, 460 U.S. at 14 (emphasis added) (quoting *Colorado River*, 424 U.S. at 813).

1.

The threshold question is whether the state and federal proceedings at issue are indeed parallel. *Bates v. Van Buren Twp.*, 122 Fed.Appx. 803, 806 (6th Cir. 2008); *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). "Exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340.

Warner correctly points out that the parties to each action are nearly identical and that both actions arise out of the same basic facts. Alone, these factors would not suffice to make the

---

[5] The Court notes that it was improper for Defendant to raise this new argument in a reply. Golden Gate, however, has filed a surreply fully responding to Defendant's abstention argument. Accordingly, Golden Gate is not prejudiced by the Court's consideration of this argument.

8

two actions "substantially similar" and therefore parallel. *Romine*, 160 F.3d at 340; *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994). However, the issues in each action are also substantially the same. The sole issue raised by Golden Gate's complaint is the enforceability of the arbitration provision in the ADR Agreement. The same issue is before the state court, as Golden Gate has raised the ADR Agreement in its defense there. Therefore, Warner has met his burden of showing that "the state court action 'as it currently exists is a parallel, state-court proceeding.'" *Wright v. Linebarger Googan Blair & Simpson, LLP*, 782 F.Supp.2d 593, 604 (W.D. Tenn. 2011) (quoting *Crawford v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).

2.

Although the proceedings are parallel, consideration of the factors listed by the Supreme Court in *Colorado River* and its progeny demonstrates that abstention is not warranted.[6] Both the Supreme Court and Sixth Circuit have held that abstention is inappropriate in circumstances substantially similar to those presented here. *See Moses H. Cone*, 460 U.S. 1, 29 (1983); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001); *see also GGNSC Vanceburg, LLC v. Taulbee*, 2013 WL 4041174 (E.D. Ky. 2013). The factors a district court must consider do not represent a "mechanical checklist"; the importance of each factor can vary case-by-case. *Moses H. Cone*, 460 U.S. at 16. Also, while there should be "a careful balancing of the important factors as they apply in a given case," "the balance [should be] heavily weighted in favor of the

---

[6] The nonexclusive list of eight factors includes the following considerations:
> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction is obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)).

exercise of jurisdiction." *Id.* Warner has assisted the Court in determining which factors ought to be deemed important in this case by focusing his own argument on the third, fifth, and sixth factors.[7]

a.

The third factor, contrary to Warner's argument, provides little support for declining to exercise federal jurisdiction. For the same reasons that the threat of piecemeal litigation does not make Kravis an indispensable party, the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration. Courts give short shrift to the argument that avoidance of piecemeal litigation bears heavily on the question of whether to abstain from exercising jurisdiction. *See, e.g., PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001); *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998) (determining that, in the context of a petition to compel arbitration under the FAA, "the potential for piecemeal litigation…has 'no force'") (quoting *Moses H. Cone*, 460 U.S. at 19); *Snap On Tools Corp. v. Mason*, 18 F.3d 1261, 1265-66 (5th Cir. 1994) (same). Warner's choice to name both the Plaintiffs and Kravis in the state court action precluded the possibility of

---

[7] ECF No. 12, § 2. The factors Warner does not specifically reference do not support abstention, either. First, the state court has not assumed jurisdiction over any res or property. In *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998), the Sixth Circuit wrote that where no property is at issue, the first factor is inapposite and supports exercising jurisdiction. Second, both forums are located in the same city, Louisville, Kentucky, and are equally convenient to the parties. Like the first factor, this factor supports exercising jurisdiction. *Id.* As to the fourth factor, the state action does have priority. The present action was filed over two months after Warner filed the state action and after Golden Gate raised the enforceability of the ADR Agreement in its state court answer. However, it appears that the state court action has not proceeded past the filing of the initial pleadings. Thus, the weight this Court would otherwise assign factor four diminishes in light of the absence of progress in the parallel action. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 21 (1983) ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."); *see also Northport Health Services of Ark. v. Rutherford*, 2008 WL 2273666, *4 (W.D. Ark. 2008) ("[This] factor does not weigh in favor of abstention, as it does not appear that the state court action has progressed any further than the current action."). For the same reason, the seventh factor—relative progress of each proceeding—is not helpful to Warner's argument for abstention. As to the eighth factor, while the state court has concurrent jurisdiction over the sole issue before this Court, this factor does not tip the scales in favor of abstention. Again, in weighing these factors, the Court is not tasked with finding an avenue to abdicate its obligation to decide cases properly before it. "[T]he balance [is to be] heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, and the Court may only dismiss and decline to exercise jurisdiction "[with] the clearest of justifications." *Colorado River*, 424 U.S. 800, 819 (1976). That standard is unmet here.

removal to federal court, thereby creating the risk of piecemeal litigation. Framing this factor as favoring abstention is disingenuous given the fact that the threat of piecemeal litigation is a threat Warner has brought upon himself.

b.

As to the fifth factor regarding the source of law, while it is true that state law will govern the standard contract defenses Warner raises against the ADR Agreement,[8] the FAA governs the enforceability of ADR Agreements generally and applies here, for reasons discussed thoroughly below. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. Further, Golden Gate has asked this Court to enjoin Warner from continuing his state court action. The federal Anti-Injunction Act will govern this question. As such, in deciding whether to compel arbitration of Warner's claims pursuant to the ADR Agreement, the Court will employ both state and federal law. When a case presents a mix of both federal and state-law issues, "the presence of state-law issues does not weigh heavily in favor of abstention." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002); *see also Moses H. Cone,* 460 U.S. at 25 (noting that the fact a case presents state-law issues, by itself, will usually not present the kind of "exceptional circumstances" required for abstention) (quotation omitted). Even though the state has concurrent jurisdiction under the FAA, the source of governing law on the arbitrability

---

[8] *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses,…such as unconscionability, may be applied to invalidate arbitration agreements without contravening [FAA] § 2.") (quotations omitted). However, Golden Gate has implied that Kentucky courts have become more hostile to Arbitration Agreements in the nursing home context after the decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), "scrutinizing the execution of arbitration agreements to a greater extent than other contracts." ECF 16-1. First, we note that there are no major issues concerning the execution of the agreement here – Warner personally signed the agreement so the power of attorney issues presented in both *Ping* and *GGNSC Vanceburg, LLC v. Taulbee*, 2013 WL 4041174 (E.D. Ky. 2013) are not present here. In any case, disparate treatment of contracts involving arbitration agreements is not allowed and to the extent any Kentucky decision applies standard contract defenses more strictly in the context of an arbitration agreement, this Court will not follow suit. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007 (6th Cir. 2003) (holding that, where state law singles out arbitration agreements in the context of contracts generally, the FAA will preempt that state law).

and injunction issues is federal. Accordingly, this factor weighs in favor of exercising jurisdiction.

c.

The sixth consideration is whether the state court will adequately protect Golden Gate's interest. This factor weighs in favor of abstention. We have no reason to doubt the state court's ability to resolve the FAA arbitration issues presented here. The FAA extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce. *Southland Corp v. Keating*, 465 U.S. 1, 16 (1984). Unlike in *Greenview Hospital v. Wooten*, 2010 WL 2835742, *4 (W.D. Ky. 2010), we do not operate in the context of a state court having already denied the federal plaintiff's motion to compel arbitration.

Vague allegations that Jefferson Circuit might not enforce the ADR Agreement, which would necessitate additional scrutiny and invocation of the Supremacy Clause, do not suffice. Although this factor provides the "strongest basis for abstaining," "'[t]he fact that the state court will protect [Golden Gate's] rights under the FAA … does not provide the exceptional circumstances necessary to justify' abstention." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) (internal quotations omitted)).

3.

On balance the relevant factors do not weigh heavily in favor of abstention in this case. Although the sixth and eighth (related) factors favor abstention, all other factors favor federal jurisdiction. Neither the fact that the state court could adequately protect Golden Gate's interests nor the fact that the state possesses concurrent jurisdiction under the FAA is an "exceptional"

circumstance necessary to compel this Court to abstain from exercising jurisdiction over this case. *See Colorado River*, 424 U.S. at 817-818.

III.

Warner makes a strenuous argument that the Court should not enforce the ADR Agreement as to his state court claims because (1) it is not a contract which implicates interstate commerce; and (2) it is unconscionable and void as against public policy.

The FAA was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985). It preempts any contradictory state law and applies to any contract that evidences an intention to settle any controversy arising from the transaction through arbitration. *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). The FAA provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Dean Witter*, 470 U.S. at 218. It "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original). While state law governs generally applicable contract defenses like those Warner lodges here, the FAA preempts any state law applicable only to arbitration agreements. *Great Earth*, 288 F.3d at 889.

A.

So long as a contract evidences a transaction involving interstate commerce, the FAA requires enforcement of clauses or agreements that require arbitration of controversies arising from it (save upon grounds that would warrant revocation of any contract). 9 U.S.C. § 2. The

applicable contract here is the "Admissions Agreement" as a whole, of which the ADR Agreement became a part. ECF No. 1, Ex. 2, § II.

The Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—a term which signals Congress's intent to invoke the broadest permissible exercise of its Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). As such, "the FAA encompasses a wider range of transactions than those actually…within the flow of interstate commerce." *Id.* at 56. The reach of the FAA extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice…subject to federal control." *Id.* at 56-57 (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

Under this analysis, rather than evaluating the individual transaction at issue, the Court must ask whether the Admissions Agreement evidences a nexus with interstate commerce at a high level of abstraction.[9] Only the "general practice need bear on interstate commerce in a substantial way." *Citizens* Bank, 539 U.S. at 53. At bottom, the "general practice" or economic activity evidenced by Warner's Admission Agreement—of which the ADR Agreement became a part—is the provision of health care. Hillcreek is best characterized as a business providing certain goods and services to its customers for a fee.

---

[9] Pursuant to *Citizens Bank*, 539 U.S. 52, 56-57 (2003), the Court finds that it is immaterial that the record is devoid of any evidence that Warner's stay was financed in part by Medicare or Medicaid, although this has been the basis for many decisions that the FAA applied to a particular nursing home arbitration agreement in question. *See, e.g.*, *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F.Supp.2d 1172, 1184 (D. New Mexico 2012), *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005). While this type of information would support our finding that the FAA applies, it is not necessary. *Accord GGNSC Vanceburg, LLC v. Taulbee*, 2013 WL 4041174 (E.D. Ky. 2013).

Warner is certainly correct that the nursing care provided him occurred wholly within the borders of Kentucky. However, Warner views the issue too narrowly. The food, medicine, and durable medical supplies that Hillcreek provided must come from somewhere. While Golden Gate provides no evidence explaining whether or what percentage of its expenditures for these items may be traced to interstate transactions (despite citing numerous decisions that rely on this type of information to find the requisite interstate nexus[10]), the Court takes judicial notice that it is impracticable for Hillcreek to procure all goods necessary for the daily operation purely through intrastate channels. Further, Warner's own complaint alleges that foreign limited liability companies "owned, operated, managed, controlled, and/or *provided services for*" Hillcreek.[11] Additionally, no one disputes that Hillcreek receives reimbursements from federal programs. Golden Living Center's website indicates that it accepts Medicare and Medicaid.[12] The receipt of Medicare and Medicaid funds are transactions involving commerce and may by themselves establish the appropriate interstate commerce nexus. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 327 (1991). Golden Gate has a nexus with interstate commerce through their and their patients' participation in Medicare and Medicaid.

---

[10] Plaintiffs rely on the following authority, for example: *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 515 (Miss. 2005) (overruled on other grounds by *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel Braddock*, 14 So. 3d 695 (Miss. 2009)); *Owens v. Coosa Valley Health Care, Inc.*, 890 So. 2d 983, 987-88 (Ala. 2004); *Triad Health Management of Georgia, III, LLC v. Johnson*, 679 S.E.2d 785, 788-89 (Ga. App. 2009); *Miller v. Cotter*, 863 N.E. 2d, 537, 544 (Mass. 2007). Importantly, all of these cases detailed, with varying levels of specificity, that the nursing home in question did, in fact, receive Medicare payments and/or out-of-state insurer reimbursements as well as services and goods from out-of-state vendors.

[11] The fact that one party to a residential real estate sale was an out-of-state commercial entity was the *only* factor incidentally linking the transaction to interstate commerce in *Saneii v. Robards*, 289 F.Supp.2d 855 (W.D. Ky.2003), which is one of the many reasons *Saneii* is factually dissimilar and unhelpful to our analysis here.

[12] *See* www.goldenlivingcenters.com/expert-thinking/paying-for-healthcare.aspx. Plaintiffs attached the opinion in *GGNSC Vanceburg, LLC v. Taulbee*, 2013 WL 4041174 (E.D.Ky. 2013) to their response. The *Taulbee* court took notice of this fact on their own accord, it appears. As the Court has considered extraneous materials attached to both parties' motions, the Court treats each motion as one for summary judgment.

The ADR Agreement became part of an Admissions Agreement that reflects a transaction involving economic activity involving interstate commerce.[13] In light of these factors, in addition to the broad policy favoring arbitration found in the FAA, the Court finds that the interstate commerce requirement is met here.

B.

The Court now turns to the question of unconscionability, a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001). Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* (citing *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. App. 1978)).

Whether a contract is substantively unconscionable (i.e., contains terms that are unreasonable or grossly unfair to one side or another) or procedurally unconscionable (referring to the process by which the contract is reached) is a fact-intensive inquiry. Here, the facts belie the existence of either brand of unconscionability.

---

[13] Two final notes: it is immaterial that the ADR Agreement includes the phrasing "[T]he parties agree…that the Admissions Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act." ECF No. 1, Ex. 2, § II. The parties cannot by agreement make an act not in interstate commerce into one that is in interstate commerce. The Federal Arbitration Act applies here not because the parties say so, but because the transaction is connected to interstate commerce. *Accord Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 n.3 (Ky. 2012); *Miller v. Cotter*, 863 N.E.2d 537, 544 n.13 (Mass. 2007). On the other hand, parties can agree that the Federal Arbitration Act will provide the basis for interpreting the contract, even if the FAA would not otherwise apply in a binding way. Warner and Golden Gate so agreed. ECF No. 1, Ex. 2, §VI. Thus, even if the FAA did not apply here and the nearly identical Kentucky Uniform Arbitration Act, KRS 417.045 *et seq.*, applied instead, the FAA would form the basis for interpreting the contract's terms were it to be deemed valid and enforceable. The Court has no doubt the present agreement would be found valid based on the analysis of an almost identical arbitration agreement in a nursing home admissions contract in the Kentucky Supreme Court's recent decision in *Ping*, 376 S.W.3d at 588-89.

The ADR Agreement contains the following features that support its conscionability: (1) it is a stand-alone agreement; (2) five pages printed in normal font; (3) bold face all capital letter provision noting the agreement is not a condition of admission to or continued residence in the facility; (4) no limitation on type or amount of damage claims; (5) no limitation on causes of action; (6) no suspect forum selection clause – arbitration is to be held in Kentucky under either option for location of arbitration, *see* ECF No. 1, Ex. 2, § IV; (7) no truncation of the otherwise applicable statute of limitations; (8) the terms are such that a person of ordinary experience and education is likely to understand; (9) the Agreement at issue is the second time Warner had occasion to read the particular ADR Agreement, as he signed an identical contract upon admission to Golden Living Center's Mount Holly facility in December, 2010; and (10) other courts applying Kentucky law have found that arbitration agreements presented as part of the nursing home admission process were not procedurally unconscionable.[14]

That the ADR Agreement is a "boiler-plate, pre-printed" document does not render it unconscionable. *See Conseco*, 47 S.W.3d at 342-43 (noting that an arbitration clause appearing single-spaced on the back of a pre-printed form did not render it procedurally unconscionable). Warner's concern that "residents, like Mr. Warner" can feel overwhelmed at the time they are presented with the ADR Agreement is too vague to evaluate. Warner has provided the Court no facts to suggest Plaintiffs' representatives failed to provide him an opportunity to ask questions and understand the terms of the agreement.

Second, Warner complains the fees for pursuing arbitration are "substantially higher" than those necessary to file a claim in Kentucky state court. The ADR Agreement specifies

---

[14] *See, e.g.*, *Abell v. Bardstown Medical Investors, Ltd.*, 2011 WL 2471210, *1-3 (W.D. Ky. June 20, 2011), *Holifield v. Beverly Health and Rehab. Srvcs., Inc.*, 2008 WL 2548104 (W.D. Ky. June 20, 2008), *Beverly Enterprises, Inc. v. Ping*, 2010 WL 2867914, *6 (Ky. App. July 23, 2010) (reversed on other grounds by *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012).

JAMS as the administrator. Warner protests that JAMS "charges substantial fees on top of what the parties have to bear to develop their case." However, the "only fee required by [a] Resident [who initiates arbitration]" is $250, which is "approximately equivalent to a court filing fee." Additionally, a solution to this alleged predicament is in Warner's hands: the ADR Agreement clearly states in a footnote in the section designating JAMS as the administrator that "[t]he Parties may agree in writing on another substantially similar method of administering ADR."

Warner also argues that JAMS's truncated discovery will prevent him an adequate opportunity to present his claims. However, the one-deposition rule Warner singles out is a term that applies equally to both sides and that is not set in stone: "The necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information…." JAMS Rule 17(b). Further, "when contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a [jury] trial…One of these accoutrements is the right to pretrial discovery." *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980). Although discovery is not extensive in a JAMS arbitration, this is counterbalanced by the fact that arbitration is not bound by the rules of evidence. *See Shelton v. The Ritz Carlton Hotel Company, LLC*, 550 F. Supp. 2d 74, 82 (D.D.C. 2008).

Further, the ADR Agreement's jury trial waiver provision is set forth in a bold, all capital letter paragraph. Like anyone else, a nursing home resident is free to waive the right to a jury trial, as long as that waiver is knowing and voluntary. Such a waiver can be accomplished during the admission process without implicating procedural unconscionability.

The precise procedures for arbitration are subject to some negotiation. If Warner has questions about those procedures, he can raise these issues with either Golden Gate or, if

necessary, the arbitrator. For all these reasons, the Court concludes that the ADR Agreement is neither substantively nor procedurally unconscionable.

C.

Finally, Warner contends that the ADR Agreement contravenes KRS § 216.515(26) by blocking his ability to bring an "action…in any court of competent jurisdiction [to enforce his rights as a long-term care resident and citizen]." However, the FAA's text includes no exception for claims made under long-term resident rights statutes. To the extent Kentucky's Residents' Rights Statute attempts to carve an exception to the types of claims that can be made subject to arbitration via valid pre-dispute arbitration agreements in the nursing home admission context, its efforts are preempted by the FAA. *See Marmet Health Care Center, Inc. v. Brown*, 2012 WL 538286 (2012) (rejecting the argument that West Virginia could prohibit pre-dispute agreements to arbitrate personal-injury or wrongful-death claims because such agreements violated the state's public policy). Accordingly, any public policy precluding the arbitration of claims against nursing homes, or precluding persons with power to contract from entering into an arbitration agreement, is preempted by the FAA. *Id.*

IV.

Finally, Golden Gate asks this Court to enjoin Warner from pursuing his claims against them in the state forum. This is always a delicate matter, but one which seems clear in this instance.

The Sixth Circuit has found that a district court's injunction of state-court proceedings after compelling arbitration did not violate the Anti-Injunction Act. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). An injunction falls within the exception as "'necessary…to protect or effectuate [the district court's own] judgments.'" It concluded "[a]n

19

injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue." *Id.*

Here, enjoining the state court proceeding does not offend the Anti-Injunction Act as a matter of law, because it effectuates the proper purposes of this Court's judgment. To be sure, it is doubtful that a state court would proceed where another court of proper jurisdiction has ruled on the validity of an arbitration agreement and waiver of civil court remedies. Nevertheless, Golden Gate is entitled assurance. Therefore, Warner is enjoined from pursuing the pending state court action against the named plaintiffs herein in Jefferson Circuit Court.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Arbitration (ECF No. 1) is SUSTAINED. Warner is hereby ENJOINED from proceeding against Golden Gate, *et al.*, in the Jefferson Circuit Court action. The Court will stay this proceeding until the conclusion of the ordered arbitration pursuant to 9 U.S.C. §3, at which time it will decide whether to enter judgment approving any arbitral award.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (ECF Nos. 7, 12) is DENIED.

cc: Counsel of Record